UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BONNIE M. MOSELEY,                    )     CASE NO. C05-1405-TSZ
                                      )
        Plaintiff,                    )
                                      )
    v.                                )     REPORT AND RECOMMENDATION
                                      )     RE: SOCIAL SECURITY
JO ANNE B. BARNHART, Commissioner     )     DISABILITY APPEAL
of Social Security,                   )
                                      )
        Defendant.                    )
_____)

        Plaintiff Bonnie M. Moseley proceeds through counsel in her appeal of a final decision of

the Commissioner of the Social Security Administration (Commissioner). The Commissioner

denied plaintiff's applications for Disability Insurance (DI) benefits and Supplemental Security

Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).

        Having considered the ALJ's decision, the administrative record (AR), and all memoranda

of record, it is recommended that this matter be REMANDED for an award of benefits.

## FACTS AND PROCEDURAL HISTORY

        Plaintiff was born on XXXX, 1960.[1] She has an 11th grade education that included special

_____

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01  education classes in math and reading.  Plaintiff previously worked as a housekeeper/maid.

02      Plaintiff filed applications for DI and SSI in March 2000, alleging disability beginning

03  March 19, 1998 due to a learning disorder and back injury.  (*See* AR 16.)  Plaintiff's applications

04  were denied initially and on reconsideration, and she timely requested a hearing.  ALJ John F.

05  Bauer held a hearing on March 12, 2002.  The ALJ heard testimony from plaintiff and plaintiff's

06  independent living counselor, Karen Powell.  (AR 30-62.)  On June 10, 2002, ALJ Bauer issued

07  a decision finding plaintiff not entitled to DI or SSI.  (AR 15-27.)

08      Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review

09  plaintiff's claim.  (AR 7-9.)  Plaintiff appealed the Commissioner's decision to this Court, and

10  subsequently accepted the Commissioner's Offer of Judgment remanding the case for further

11  proceedings.  (AR 432-35.)  In January 2003, while the action was pending in this Court, plaintiff

12  filed a second application for SSI benefits, again alleging disability since 1998.  (AR 658-61.)  This

13  application was consolidated with the existing application.  (*See* AR 438.)

14      ALJ Edward Nichols held a hearing on the consolidated applications on February 9, 2005.

15  (AR 685-727.)  The ALJ heard testimony from plaintiff, vocational expert Robert Aslan, and

16  medical expert Tom Dooley, Ph.D.  On June 11, 2005, ALJ Nichols issued a decision finding

17  plaintiff not entitled to DI or SSI.  (AR 413-30.)

18      Plaintiff appealed the final decision of the Commissioner to this Court.

19  / / /

20  / / /

21

22  official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 **JURISDICTION**

02        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

03 **DISCUSSION**

04        The Commissioner follows a five-step sequential evaluation process for determining

05 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

06 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

07 engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

08 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

09 borderline intellectual functioning, learning disabilities, depression, and alcohol dependence severe.

10 Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ

11 found that plaintiff's impairments did not meet or equal a listed impairment.  If a claimant's

12 impairments do not meet or equal a listing, the Commissioner must assess residual functional

13 capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

14 perform past relevant work.  If a claimant demonstrates an inability to perform past relevant work,

15 the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the

16 capacity to make an adjustment to work that exists in significant levels in the national economy.

17 The ALJ here determined that, when using alcohol, plaintiff did not have the RFC to perform her

18 past relevant work or any other work existing in significant numbers in the national economy.  The

19 ALJ then concluded that, when not using alcohol, plaintiff could perform her past relevant work.

20        This Court's review of the ALJ's decision is limited to whether the decision is in

21 accordance with the law and the findings supported by substantial evidence in the record as a

22 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

02  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

03  (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

04  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

05  2002).

06  In this case, plaintiff primarily argues that the ALJ improperly assessed the materiality of

07  her alcoholism and erred in not finding her personality disorder and schizophrenic/psychotic

08  disorder severe at step two. Plaintiff also raises supplemental arguments concerning the ALJ's

09  step two, three, and four findings, as well as the ALJ's consideration of the opinions of her health

10  care providers, the testimony of the medical expert, and the testimony of her independent living

11  counselor. Neither plaintiff's opening brief, nor reply brief specifies a request for relief for either

12  further administrative proceedings or an award of benefits.

13  The Commissioner argues that the ALJ applied the correct legal standards, supported his

14  decision with substantial evidence, and should be affirmed. The Commissioner alternatively argues

15  that plaintiff's alleged errors would, at most, warrant remand for further administrative

16  proceedings.

17  For the reasons described below, the undersigned concludes that this matter should be

18  remanded for an award of benefits.

19  <u>Consideration of Drug Addiction or Alcoholism</u>

20  An individual is not considered to be disabled if drug addiction or alcoholism (DAA) would

21  be a contributing factor material to a determination of disability. 42 U.S.C. §§ 423(d)(2)(C),

22  1382c(a)(3)(J). Implementing regulations governing the consideration of DAA state: "If we find

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01   that you are disabled and have medical evidence of your drug addiction or alcoholism, we must

02   determine whether your drug addiction or alcoholism is a contributing factor material to the

03   determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The "key factor" in this

04   determination is whether an individual would still be found disabled if he or she stopped using

05   drugs or alcohol. *Id*. at §§ 404.1535(b)(1), 416.925(b)(1). The regulations further state that, in

06   making such a determination, "we will evaluate which of your current physical and mental

07   limitations, upon which we based our current disability determination, would remain if you

08   stopped using drugs or alcohol and then determine whether any or all of your remaining limitations

09   would be disabling." *Id*. at §§ 404.1535(b)(2), 416.925(b)(2). DAA is deemed material if the

10   remaining limitations would not be disabling, and not material if those limitations would be

11   disabling. *Id*. As with each of the first four steps of the disability evaluation process, the claimant

12   bears the burden of showing that his or her drug or alcohol addiction is not a contributing factor

13   material to his or her disability. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

14       In the present case, the accepted Offer of Judgment remanding this matter required the

15   ALJ to, *inter alia*, evaluate whether plaintiff's alcohol abuse is a material factor, and to provide

16   a function-by-function assessment of her ability to perform work-related mental activities both

17   with and without consideration of her alcoholism. (*See* AR 414, 434.) Also, the Appeals Council

18   directed the ALJ as follows:

19       . . . In considering whether DAA is **material**, decide: 1) which of the current physical
        and mental limitations upon which the claimant was found disabled would remain if

20       the individual stopped using drugs or alcohol and (2) again in accordance with the
        sequential evaluation process, whether the remaining limitations would still be

21       disabling.

22   (AR 438 (internal citations omitted.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01        After assessing plaintiff's impairments at step two, the ALJ found that, even when

02   drinking, plaintiff was not impaired enough to meet a listing at step three. (AR 422-23.) The ALJ

03   then determined at steps four and five that, when plaintiff used alcohol, she was unable to do any

04   of her past relevant work or any other work existing in significant numbers in the national

05   economy due to her inability to sustain a full time work schedule. (AR 428.) He subsequently

06   found that, if plaintiff did not use alcohol, she could perform "simple, repetitive work with no

07   close supervision and no contact with the public[,]" including her past relevant work as a

08   housekeeper/maid. ( *Id.*)   The ALJ, therefore, concluded that plaintiff's alcohol use was a

09   contributing factor material to the determination of disability. (*Id.*)  He added:

10        The claimant's counsel argues that the Agency's 1996 "policy" memo controls-if it
          cannot be determined whether the claimant would be disabled if she stopped abusing
11        alcohol, in essence the tie goes to the claimant.  However, in this case, there is no
          such ambiguity.  The evidence clearly shows that with alcohol use the claimant cannot
12        work, and without alcohol use, she can work.  In addition, counsel is apparently
          unfamiliar with *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2001), which places the
13        burden on the claimant to show that her substance abuse is not material once it is an
          issue.  She has not met this burden.  She admits she is a regular drinker now and she
14        admits she was able to work when she was drinking.

15   (AR 429.)

16        Plaintiff alleges the ALJ failed to appropriately assess the materiality of her alcoholism.

17   She additionally points to the ALJ's step three finding that she did not meet the criteria of any

18   mental listing even when she is drinking (AR 422), as conflicting with his later finding that she is

19   disabled at step four with consideration of her use of alcohol (AR 429-30).

20        Plaintiff also argues that the ALJ erred in not finding her disabled given the intertwined

21   nature of her severe mental impairments and the impairment of her alcohol use.  *See* Emergency

22   Teletype (August 30, 1996) ("EM-96200"), Answer 29 ("When it is not possible to separate the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01    mental restrictions and limitations imposed by DAA and the various other mental disorders shown

02    by the evidence, a finding of 'not material' would be appropriate.") (available at

03    http://www.ssas.com/daa-q&a.htm).  She points to the testimony of Dr. Dooley, the medical

04    expert, as supporting this argument.  (*See* AR 720-22 (quoted below.))  Plaintiff further disputes

05    the ALJ's characterization of Dr. Dooley's testimony, noting he testified it would be hard to say

06    whether the "*psychotic*" portion of her diagnosis would remain absent consideration of alcohol,

07    not, as stated by the ALJ, that "it would be hard to say if [she] still would have    *psychiatric*

08    disorders."  (*See* AR 422 and 719.)

09          The Commissioner responds that the ALJ's analysis of plaintiff's alcohol use is consistent

10    with Ninth Circuit law – first addressing plaintiff's alleged disability with consideration of alcohol

11    abuse, and then without consideration of alcohol abuse. (*See* AR 422-29.)  She further argues that,

12    even if the ALJ erred in finding plaintiff did not meet a listing even with consideration of her

13    alcohol abuse, such error does not alter the ultimate conclusion, supported by the record as a

14    whole, that plaintiff was able to work when she was not abusing alcohol.

15          The Commissioner notes that ALJs are expected to abide by EM-96200, even though it

16    is not published in the Federal Register or the Code of Federal Regulations and, as such, does not

17    carry the force and effect of law.  *See*, *e.g.*, *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir.

18    2003).  However, the Commissioner avers that, even if plaintiff rationally interprets Dr. Dooley's

19    testimony, the ALJ's interpretation that Dr. Dooley testified that plaintiff's overriding impairment

20    was alcohol abuse is equally rational and should stand.  *See Thomas*, 278 F.3d at 954 (if there is

21    more than one rational interpretation, one of which supports the ALJ's decision, the Court must

22    uphold that decision).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01          As directed by the governing regulations, after finding plaintiff disabled with consideration

02   of alcohol, the ALJ was required to reassess plaintiff pursuant to the five step process, considering

03   which of plaintiff's limitations would remain and whether any or all of those remaining limitations

04   would be disabling.  20 C.F.R. §§ 404.1535(b)(2), 416.925(b)(2).  ( *See also* AR 438 (Appeals

05   Council's directive quoted above.))  The ALJ failed to conduct such an analysis in this case.

06   Instead, although appropriately assessing plaintiff at steps one through five with consideration of

07   her alcohol use, the ALJ then skipped ahead to step four and perfunctorily considered plaintiff

08   without consideration of her use of alcohol.  The ALJ's mismatched step three and four findings

09   with consideration of plaintiff's use of alcohol, while arguably harmless standing alone,

10   underscores the ALJ's flawed DAA analysis as a whole.

11          The undersigned also rejects the Commissioner's argument as to Dr. Dooley's testimony.

12   As an initial matter, while the ALJ clearly reached this opinion himself, he states nowhere in his

13   decision that Dr. Dooley opined that plaintiff's overriding impairment was alcohol abuse.  Instead,

14   the ALJ states that Dr. Dooley testified that plaintiff's "chronic alcohol use complicated her

15   psychiatric picture[,]" and that "if the alcohol was taken away, it would be hard to say if the

16   claimant still would have any psychiatric disorders." (AR 422.)  As noted by plaintiff, Dr. Dooley

17   actually stated that it was "hard to say if she would still have the *psychotic* portion." (AR 719

18   (emphasis added.)) Moreover, taken as a whole, the undersigned does not find the Commissioner's

19   interpretation of Dr. Dooley's testimony equally rational to that suggested by plaintiff.  In addition

20   to the above, Dr. Dooley testified, when asked about the "B" criteria for mental listings:  "Well,

21   like I said, Your Honor, the alcohol sort of clouds everything out." (AR 721.)  When the question

22   was rephrased as, "But in terms of the listings, the functional limitations, you're just not able to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  comment or are you able to?  Where are we?", Dr. Dooley stated: "I can't, I can't, I don't feel I

02  have enough here to qualify for how she would function without alcohol because it seems to be

03  a common pollutant in her life."  (*Id*.)  Contrary to the ALJ's assertion, therefore, this testimony

04  presents an ambiguity in the evidence and supports plaintiff's contention that it is not possible to

05  "separate the mental restrictions and limitations imposed by DAA and the various other mental

06  disorders shown by the evidence[.]"  EM-96200.[2]

07       Finally, as discussed below, the ALJ erred at step two.  The errors at that step necessarily

08  implicate the ALJ's assessment of plaintiff both with and without consideration of her use of

09  alcohol.  Accordingly, for all of these reasons, the undersigned concludes that the ALJ's DAA

10  assessment is not supported by substantial evidence and necessitates remand.

11                                    Assessment of Impairments at Step Two

12       At step two, the ALJ must determine whether the claimant has a medically severe

13  impairment or combination of impairments.  Step two has been characterized as "a de minimis

14

---

15       [2] *Compare Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003) ("If the ALJ
is unable to determine whether substance use disorders are a contributing factor material to the
claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award
of benefits must follow.  In colloquial terms, on the issue of the materiality of alcoholism, a tie
goes to Brueggemann."; finding ALJ failed to follow proper procedures for evaluating materiality
of substance use disorder) (internal citations to, *inter alia*, EM-96200 omitted), *with Vester v.
Barnhart*, 416 F.3d 886, 889-92 (8th Cir. 2005) ("After considering all of the evidence under the
substantial evidence standard, we are satisfied that the ALJ case untangled Ms. Vester's history
of alcoholism and mental illness with sufficient clarity and detail to support the finding that she is
not disabled apart from her alcoholism. In contrast to other cases involving alcohol abuse that have
been remanded to the ALJ for reconsideration, the ALJ followed the analytical framework
prescribed by the regulations, made detailed factual findings about Vester's depression and
alcoholism, and supported his findings with references to the record. We conclude that a
reasonable person considering the record as a whole could reach the conclusion adopted by the
ALJ.") (internal citations to, *inter alia*, *Brueggemann* omitted).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

02  Cir. 1996).  "An impairment or combination of impairments can be found 'not severe' only if the

03  evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

04  ability to work.'" *Id.* (internal citations omitted.)

05          In this case, the ALJ found plaintiff's borderline intellectual functioning, learning

06  disabilities, depression, and alcohol dependence severe at step two.  (AR 422.)  He went on to

07  state:

08          The claimant has some scattered diagnoses of schizophrenia and psychosis, NOS
        based on her description of occasional auditory hallucinations, but these
09          hallucinations, per the claimant's own report, appear to happen only when she is
        drinking.  In May 2004 a mental health clinic determined that the claimant did not
10          have a confirmed diagnosis of any psychotic related disorder that would qualify her
        for treatment at their clinic (Exhibit 49F, pg. 5).  Based on the medical record, I find
11          that the claimant's alleged schizophrenia/psychotic disorder is not a medically
        determinable impairment.  Several medical professionals have mentioned that the
12          claimant might have a personality disorder, but it is mainly a rule-out diagnosis, so I
        find that it is not a medically determinable impairment.  Although the claimant has
13          periodically complained of back pain and of other physical problems, there is no
        objective evidence that the claimant has any medically determinable physical
14          impairments (Exhibit 11F).

15          Medical expert Tom Dooley, Ph.D. testified at the hearing that the claimant's chronic
        alcohol use complicated her psychiatric picture.  The doctor stated that if the alcohol
16          was taken away, it would be hard to say if the claimant still would have any
        psychiatric disorders.

17

18  (*Id.*)

19          Plaintiff contends the ALJ erroneously rejected her personality disorder and schizophrenia

20  or psychotic disorder as severe,[3] and, consequently, failed to assess the degree of functional

21  _____

22          [3] Plaintiff also points to her anxiety, noting Dr. Kerry Bartlett identified marked and
        frequent restrictions stemming from an anxiety-related disorder in a March 5, 2002 questionnaire.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  limitation imposed by those impairments. *See* 20 C.F.R. §§ 404.1520a and 416.920a (setting forth

02  four functional areas to be reviewed in evaluation of mental impairments: (1) activities of daily

03  living, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of

04  decompensation).  She rejects the ALJ's contention that her personality disorder was mainly a

05  rule-out diagnosis as contrary to ALJ Bauer's finding (*see* AR 17), as well as the opinions of

06  medical providers whose opinions the ALJ gave weight, including Dr. Dooley and DDS reviewers

07  Drs. William Lysak and Kristine Harrison  (*see* AR 175, 201, 239, 422, 425, 720).  Plaintiff also

08  points to evidence in the record supporting severe schizophrenia or psychotic disorder, including,

09  but not limited to, the medical expert's testimony.  (*See, e.g.*, AR 210, 267, 560, 625, 720.)  She

10  further argues that the ALJ wrongly dismissed this condition as existing only while she was

11  drinking and did not accurately summarize the May 2004 mental health clinic intake note he relied

12  upon in dismissing the severity of this condition.  (  *See*, *e.g.*, AR 208 and 381 (Dr. Nathan

13  Kronenberg, who diagnosed anti-psychotic medication, noted that claimant drank beer on three

14  separate occasions, but remained free of auditory hallucinations, and later opined that plaintiff's

15  psychotic disorder would continue regardless of her use of alcohol) and AR 632 (May 2004 intake

16  form disqualified plaintiff because of lack of qualifying diagnosis *and* her previous failures at and

17  poor indication for chemical dependency treatment)).

18         The Commissioner does not directly respond to plaintiff's arguments regarding personality

19  disorder.  With respect to schizophrenia or psychotic disorder, the Commissioner asserts that the

20  ALJ based his assessment on mental health evaluations that did not confirm this diagnosis and

21  _____

22  (AR 373-74.) However, this questionnaire, standing alone, is not compelling evidence of a severe
    anxiety disorder.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  activities of daily living inconsistent with plaintiff's level of alleged disability.  (*See* AR 422 (ALJ's

02  step two assessment), AR 168 (May 2000 report of Dr. Anselm Parlatore not making a diagnosis

03  of schizophrenia or psychotic disorder), and AR 632 (May 2004 mental health intake form.))  The

04  Commissioner also points to the ALJ's reliance on plaintiff's reports that her hallucinations only

05  occurred while she was drinking.  (*See* AR 422 and 632.)

06          Plaintiff's reliance on Drs. Lysak and Dooley with respect to personality disorder is not

07  helpful given that these physicians both, as reflected in the ALJ's analysis, only found the existence

08  of a personality disorder "possible."  (*See* AR 175, 201 (Dr. Lysak assessed possible personality

09  disorder with mixed avoidant passive features) and AR 720 (Dr. Dooley testified: ". . . I think that

10  there is a possibility of a personality disorder, avoidant, or dependent personality.  It's not a strong

11  diagnosis from the documentation.")  However, Dr. Harrison did diagnose a mixed personality

12  disorder.  (AR 239.)  Also, the ALJ stated at hearing, "I think personality and schizoaffective are

13  certainly there[]" (AR 724), and included personality disorder with other impairments he had

14  deemed severe in finding number nine of his decision.  (AR 430 ("When the claimant is not using

15  alcohol, the claimant's medically determinable borderline intellectual functioning, *personality*

16  *disorder*, and alcohol dependence do not prevent the claimant from performing her past relevant

17  work.") (emphasis added)).[4]  The undersigned finds both the failure to directly address Dr.

18  Harrison's firm diagnosis and the ALJ's inconsistent treatment of plaintiff's purported personality

19

20

---

21      [4] As noted by plaintiff, this list of impairments conflicts with those listed in finding number

22  two.  (*See* AR 429-30 (finding plaintiff's borderline intellectual functioning, learning disabilities,
    depression, and alcohol dependence severe.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  disorder of concern.[5]

02      The undersigned also finds the ALJ's assessment of schizophrenia or psychotic disorder

03  troublesome.  The ALJ's reliance on plaintiff's testimony that her hallucinations occurred only

04  while drinking is particularly problematic.  The record is replete with references to plaintiff's

05  unreliability as a historian and her difficulty in responding to questions.  (*See, e.g.*, AR 165 and

06  260 (Dr. Parlatore described plaintiff's responses to questions as vague and noted she "seemed

07  perplexed, bewildered and forlorn[.]"), AR 210 (Dr. Kronenberg stated: "Based on her shyness

08  and somewhat impaired memory she made a poor historian in spite of being aided by a DVR

09  caseworker."), AR 211 (July 2000 mental health assessment form states: "Client very vague, may

10  not be reliable reporter."), AR 260 (Dr. Gary Smith, in a discharge summary in 1994, stated: "Ms.

11  Moseley was quite ambivalent in presenting her psychotic symptoms, variously reporting hearing

12  voices and then seeming to indicate that they had not been present. . . . The presence of any

13  delusions could not be determined because of the inability of the patient to discuss those with this

14  examiner in any meaningful fashion."), AR 558-59 (Dr. Allan Fitz noted plaintiff was vague, had

15  difficulty recalling specific details about her past, appeared easily confused, had difficulty

16  understanding questions, and needed frequent clarification.))  Plaintiff's testimony on this point

17  is also difficult to decipher.  For example, the ALJ and plaintiff engaged in the following exchange

18  regarding a time period when plaintiff was hearing voices:

19      Q      Okay.  Was this when yuo [stet] were drinking?  When you're not drinking I
                think you said you don't hear them so much.

20

21          [5] The undersigned also takes note that ALJ Bauer previously found plaintiff's personality
    disorder severe.  (AR 26.)    ALJ Nichols incorporated ALJ Bauer's decision by reference as a
22  "summary and discussion of the evidence."  (AR 414.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01     A     Yeah.  I *wasn't* drinking when I was hearing him.

02  (AR 716-17 (emphasis added.))  Additionally, while the ALJ reported plaintiff as stating she only

03  had hallucinations "when she 'coming off a drunk.'" [stet] (AR 427), plaintiff testified at one point

04  that she "was *probably* coming down off of it from drinking." (AR 707-08 (emphasis added.))[6]

05     Moreover, in addition to nurses and social workers, several acceptable medical sources

06  diagnosed plaintiff with schizophrenia and/or psychosis. ( *See* AR 210 (Dr. Kronenberg found

07  episodes of psychosis as manifested by delusions and hallucinations related to periods of stress);

08  AR 267 (Dr. Gary Smith diagnosed psychotic disorder NOS, probable schizophrenia, improved);

09  AR 560 (Dr. Allan Fitz reported history of paranoid features and possible hallucinations due to

10  either alcohol use or underlying psychiatric diagnosis of schizoaffective disorder); AR 625 (Dr.

11  W. Douglas Uhl diagnosed psychotic disorder.))  (*See also* AR 724 (ALJ's statement that: "I think

12  personality and schizoaffective are certainly there."))  To say that these diagnoses were "scattered"

13  or that this condition does not rise to the level of a medically determinable impairment is an

14  understatement.  Also, not all of the ALJ's criticisms of these physicians' opinions withstand

15  scrutiny.  For example, the ALJ gave significant weight to Dr. Fitz's opinion that – "Without

16  alcohol dependence, Bonnie would likely have some potential for being employed[.]" (AR 426

17  (citing AR 560.))  However, Dr. Fitz went on to state that plaintiff "would likely have continued

18  moderate to marked difficulties due to her reported cognitive issues and moderate

19  _____

20       [6] Other testimony from plaintiff during the hearing exemplifies both the uncertain nature
    of her reporting and the extent of her mental health issues.  For example, plaintiff testified that a
21  woman who looks like Dolly Parton, whose name she did not know, had several months earlier
    come to her apartment and then driven her to California for a couple weeks worth of work on a
    game show at the MGM studio.  (AR 691-94.)  When asked whether this had really happened,
22  plaintiff replied: "I think I was there."  (AR 693.)

01  depression/anxiety[,]" and that it was "not clear" whether her paranoid features and hallucinations

02  were related to alcohol or schizoaffective disorder, adding that she "had difficulty providing details

03  from her past that could have helped rule out this disorder." (AR 560.)[7]

04         Finally, in addition to inaccurately representing Dr. Dooley's testimony as described above,

05  the ALJ did not mention Dr. Dooley's statement that plaintiff's periods of decompensation also

06  appear related to stress. (AR 718-19.) Accordingly, for all of these reasons, the undersigned

07  concludes that the ALJ's step two inquiry into plaintiff's purported personality disorder and

08  schizophrenia or psychotic disorder does not withstand scrutiny and necessitates remand.[8]

09                                              Remand

10         The Court has discretion to remand for further proceedings or to award benefits. *See*

11  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits

12  where "the record has been fully developed and further administrative proceedings would serve

13  no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

14         Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
          reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that

15        must be resolved before a determination of disability can be made; and (3) it is clear
          from the record that the ALJ would be required to find the claimant disabled if he

16        considered the claimant's evidence.

17

18         [7] The Commissioner cites a report from Dr. Parlatore as supporting the ALJ's assessment
    of this condition. (*See* Dkt. 14 at 12.) However, the ALJ did not point to Dr. Parlatore's report

19  at step two and, in fact, later gave no weight to this physician's opinion. (*See* AR 422, 424-25.)
    Additionally, while Dr. Parlatore's report made no diagnosis of schizophrenia or psychotic

20  disorder, it also wrongly reported "no history of psychosis, hallucinations, paranoia or
    delusions[,]" and "[n]o past psychiatric history." (AR 166-67.)

21         [8] Plaintiff raises an assortment of additional errors with respect to the ALJ's conclusions
    at steps two, three, and four. However, the undersigned finds it sufficient to report that the ALJ's

22  step two errors and the flawed DAA analysis renders the decision unsupported as a whole.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  *Id.* at 1076-77.  In this case, in addition to the errors outlined above, the undersigned finds the

02  record fully developed and concludes that the evidence compels a finding of disability.

03        As indicated above, Dr. Dooley was unable to render an opinion as to how plaintiff would

04  function without alcohol.  His testimony, therefore, supports a conclusion that plaintiff's alcohol

05  use was not material to the determination of disability.  ( *See* AR 721 (Dr. Dooley testified:  "I

06  can't, I can't, I don't feel I have enough here to qualify for how she would function without

07  alcohol because it seems to be a common pollutant in her life.") and EM-96200 ("When it is not

08  possible to separate the mental restrictions and limitations imposed by DAA and the various other

09  mental disorders shown by the evidence, a finding of 'not material' would be appropriate."))

10        In addition, a review of the record in this case reveals relatively minimal evidence to

11  support the ALJ's conclusion.  (*See generally* AR 415-27.)  Moreover, the evidence relied on by

12  the ALJ and the reasoning proffered for that reliance is problematic in several respects.  For

13  example, the ALJ gave significant weight to Dr. Fitz's opinion that, without alcohol use, plaintiff

14  "*might* be able to work[.]"  (AR 426 (emphasis added; citing AR 560 ("Without alcohol

15  dependence, Bonnie would likely have some potential for being employed . . .[.]"))  However, in

16  addition to the fact that this equivocal opinion is hardly compelling evidence in support of the

17  ALJ's conclusion, the ALJ neglected to address the totality of Dr. Fitz's opinion on this point,

18  including his acknowledgment of plaintiff's borderline intellectual functioning and "continued

19  moderate to marked difficulties due to her reported cognitive issues and moderate

20  depression/anxiety[]" as additional barriers to her ability to work.  (AR 560.)  Also, although the

21  ALJ gave significant weight to the 1998 opinion of Dr. Bartlett finding plaintiff only moderately

22  impaired, the undersigned finds equally significant Dr. Bartlett's recognition as to plaintiff's limited

01  awareness and her inadequacy as a historian of her condition.  (*See* AR 154 ("Unfortunately

02  Bonnie appeared to be quite limited in awareness of much of her early history, somewhat concrete

03  in her appreciation of her current history and affective state, relatively shy, and limited in language

04  skills, and thus the overall thoroughness and veracity of information presented in this section must

05  be considered somewhat uncertain."))[9]

06      Further, the ALJ's consideration of several physicians' opinions, including Drs. Donald

07  Piro, Parlatore, Kronenberg, and Uhl, hinged in significant part on the ALJ's assessment of

08  plaintiff's alcohol use and the accuracy of her reporting, a fact complicated by both the ALJ's

09  flawed DAA analysis and plaintiff's documented unreliability as an historian.  (*See* AR 424-26.)

10  Finally, although it was not inappropriate for the ALJ to criticize interrogatories completed years

11  after various physicians treated plaintiff, it should be noted that the ALJ had no difficulty in relying

12  on the opinions of DDS physicians who never examined plaintiff.  (*See* AR 424-25).

13      Based on the above, the undersigned concludes that the medical record as a whole

14  supports a finding of disability and that further administrative proceedings would serve no useful

15  purpose.  The fact that plaintiff has already waited six years for her disability determination, and

16  that additional proceedings would pose further delay, additionally weighs in favor of an award of

17  benefits.  *See Smolen v. Chater*, 80 F.3d at 1292 (noting seven-year delay and additional delay

18  posed by further proceedings); *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting

19  administrative proceedings would only prolong already lengthy process and delay benefits).

20

21      [9] (*See also* AR 369-75 and AR 424 (March 2002 interrogatories from Dr. Bartlett finding
marked mental limitations in all areas and ALJ's decision to not give weight to these
22  interrogatories based on the lapse in time between their completion and when Dr. Barlett last saw
plaintiff.))

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01

## <u>CONCLUSION</u>

02        For the reasons set forth above, this matter should be REMANDED for an award of

03   benefits.

04        DATED this <u>23rd</u> day of May, 2006.

05

06                                               _____
                                                 Mary Alice Theiler
07                                               United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18